21-1861, Halo Electronics v. Bel Fuse. Mr. Draxeth, please proceed. May it please the Court, good morning. I have some concern that the chambers in reading the briefs may see this as one of those cases with two ships passing in the night, so I thought it might be helpful to the Court to quickly frame what we think are the two issues the Court needs to decide in order to resolve this case. The first issue is whether the order and judgment of September 6, 2017 made this case final on September 6, 2017, whether it adjudicated the leftover interest issue. We think the answer to that is clearly no, based on a couple of cases from this Court. And then the second issue, if it wasn't final on September 6, is there some way that it became final after September 6, 2017? We think the answer to that is no, based on cases from this Court, based on the rules, and based on decisions from other courts. So issue number one, this Court's prior decision in this very case, this litigation, holds or held that the remaining interest issues were the type that would block finality. Let me, I don't want to throw you off the presentation I'm making, but to get to the Court here, is your position that absent any other event in this case, you could have brought this proceeding 5 years, 10 years, or 20 years down the road, and you would be in exactly the same position you are today? I think if you say there was no final judgment on September 6... But that's your position, there wasn't. So if you accept that, I think the case law and the rules support that the passage of I think it's maybe far-fetched. Why is it far-fetched? This is 3 years, that's a very long period of time for a case to be in limbo. It is and it isn't. You know, we cited Penn West, we cited Layman, those were both 3, this was under 3, those cases were both 3 years, and the 1st Circuit and the 3rd Circuit in those cases said we, essentially what this Court said in Enzo v. Genprobe, we have no choice but to reopen the case. I don't think you're going to have... We have weird facts in this case, obviously, in part because we had 2 different appeals crossing, we had an appeal that was aborted, and came back at a different time, and I think confused the district court or got it off guard. So your position is that this is not... You filed an appeal, which you are now arguing was an impreventive appeal, for which we have no jurisdiction. If you're right about that... And we have an alternative argument, but yes... I understand, and the alternative, if you're right about that, then your remedy is mandamus, right? I think we are in the position of Enzo v. Genprobe. So there was an appeal, and it was not a proper appeal, now it was from the party that wasn't asking for a remand, but I don't think that changes. In Enzo v. Genprobe, you had a judge who thought he'd enter a final judgment. He entered a judgment. He told the clerk to close the case. He asked the parties, is there anything left for me to do? They said no. So we had a judgment, we had a closure of the case, there we had a judge who not only made clear at the time that he thought he was making a final, but we had a party that said to the judge, no, you don't have anything else to do. And yet, there, there was not a final judgment, and this court, what this court did, was it said, we don't have jurisdiction, go back, and we haven't briefed this part, but I think this would be the most efficient thing to do, is to hold the appeal, say, go back, have the judge rule on docket 635 and the opposition to that, and the reply to that, to perfect the appeal, and then bring it back and merge it together. Now, I don't remember the specific facts of Enzo, so help me. It's my recollection, though, that what was at issue there is completely unaddressed counterclaims. Is that right? The court had addressed the invalidity counterclaim and not addressed the inequitable conduct counterclaim. Right. And so when the court said, is there anything left for me to do, which party was it that said, nope, nothing left for you to do? The one who had the still pending counterclaims or the other one? I believe both parties did. Are you sure about that? I believe so. Now, there was a dispute on appeal on what did that mean, what did they intend by Genprobe, the party that was trying to say there wasn't jurisdiction, so that would be the party in our position. What did Genprobe mean when they said to the judge, you're done? And they said, well, all we meant was, you're done with what was in the hearing that day, invalidity. But here's what's critical. This court went through and gave the argument from Enzo, gave the argument from Genprobe. They were making all sorts of equitable arguments, fairness arguments about why this judgment should be considered final, even though it didn't adjudicate the claim. And this court, after laying out the party's arguments, set them aside and said, we have no choice. I think the fair reading of Enzo versus Genprobe there is equitable issues do not play if there was not a final judgment on the day that it's alleged. Well, Penn West, although it sent the case back to the district court, said that the district court could decide whether this case should be disposed of based on latches or failure to prosecute under Rule 41B. So certainly that case left it open, at least at the district court level, to dispose of the case for failure to act expeditiously by the appellant. Why isn't that the right disposition or either that or for us to decide that, in fact, latches applies to the alternative request for mandamus in this case? Okay, latches was not decided by the district court here. Well, he didn't expressly use the term latches because nobody had said that, but he said all the words that would be necessary to address the question of latches. He emphasized that, number one, this had been a very long period of time, and number two, that there was prejudice to the non-appealing party here, which is the two measures of latches. Why isn't that the right way to look at this case in order to avoid our being in this impossible position of having a case that can be brought back to life after 20 years? Passage of time has been argued and equities in that context, but latches has not been argued and was not ruled on by the district court in this case. So that's part one. I'll get to part two because I know you're going to ask me about that. Part one is it hasn't been ruled on. The district court would have to rule on that at first, and our opponent never raised that issue. What the district court ruled on and what our opponent ruled on was there was a final judgment on September 6th. Now, under Rule 60, does delay due to various equities allow us to undo that final judgment? And we bore a very heavy burden on that, if you assume that. We're not appealing that part of the case. So that's all that's been decided is that the delay does not overcome the heavy burden of finality. If you were to think that latches might play in here, first of all, it hasn't been argued yet. So I think it would be beyond the court's ability as a court of review to pick it up for the first time on appeal, because that's a different issue than whether we can overcome the heavy burden of Rule 60. But also, I don't think the record supports it. You mentioned reliance. We have a turning argument for reliance only. We actually have evidence in the record that comes counter to that. If you look at the Woodford Declaration at Appendix 1637, it indicates that the parties, Mr. Countryman and Mr. West here, were discussing after September 6th the issue of the remaining interest. September 6th of what year? September 6th of 2017. Right. That's three years back before the case was ultimately presented again to the district court. Right. But the point to that is there is no reliance on them believing that this was a final judgment. They may be able to argue that the passage of time led to something, all right? And we could argue back, well, there's a special situation here because our attorney disappeared. They say they don't know why he disappeared, but our attorney disappeared from the scene. And we could do all that potentially. You had 11 attorneys in this case that entered an appearance. And one attorney disappearing isn't an explanation for this remarkable failure to continue addressing the problem of the case. What happened to those other 10 attorneys? I think the discussion we're having here is the sort of discussion that could if it was preserved and if it was presented properly with evidence that we could have at the trial court. I don't think it's an appropriate issue for an appellate court to pick up in the first instance. I guess one thing I'm confused about, when the judge entered final judgment in 2017, having resolved the enhanced damages and attorney's fees motions, HALO had not raised with the judge anything about pre-judgment interest still being on the table, despite our prior dismissal, which sent issues back. HALO never raised it at any point. Why isn't it the case that HALO abandoned that issue, such that when the judge entered final judgment and closed the case, that was, in fact, final judgment which closed the case? HALO has simply abandoned its rights to continue to pursue the pre-judgment interest. So I think on that, I direct the court to Appendix 72, which is the docket. It's very small, so I have to look closely. It's the conference from September 27, 2016. They're discussing that very issue. The court says, and this is after it had been briefed. Where are you? Oh, I'm sorry. Appendix 72, about the middle there, it's docket entry 605. And then if you go to about the middle of that docket entry, and for context, this is after the parties had briefed the interest issue. The court had what we call half-ruled on it. The court had told the parties go back and try to figure it out, and the parties came back and briefed it again, said we couldn't figure it out. Please finish it for us. And it says there in the docket entry, the court will take this issue under advisement and issue a written order. And so the ball was in the court's court. Yes, but that's in 2016. And then in 2017, the court issues an order addressing damages and attorney's fees and makes clear, it says, it is further ordered that the clerk of the court shall enter judgment accordingly and close this case. So the court has now, in fact, issued a written order. Now, granted, that written order didn't address pre-judgment interest, but why doesn't HALO have an obligation to renew that question to the extent that there is potentially a deficit in the 2017 final judgment? And I think Enzo versus GenProbe answers that. Enzo versus GenProbe is a counterclaim issue. All claims and counterclaims have been fully resolved in this case. Pre-judgment interest isn't a claim. I would say that claim has not been resolved. It is part of, if that's true, then the prior appeal in this case should have come out differently. The claim we had was for patent infringement, and part of that claim, to finish off that claim, is to award us our interest. So there was a claimant. There wasn't an entire claim remaining, but that's not what the final judgment rule requires. It requires that everything be taken care of, except for acting on the judgment. And so the distinction of counterclaim versus interest, I don't think, makes a difference under the Catlin standard from the Supreme Court, under this court's previous decision in this case. And then, as a result of that, Enzo versus GenProbe applies, because the decision was not actually, whether explicitly or implicitly, the interest issue was not resolved in that 2017 order. Would you like to reserve your remaining rebuttal time? Thank you, Your Honor. Mr. Kish? Good morning, Your Honors, and may it please the court. This court should affirm the district court's order in its entirety. The U.S. Supreme Court carefully drafts and amends the federal rules in order to promote the fairness and the efficiency of litigation in the federal courts. They are designed to make things faster, fairer, and simpler, not longer and more difficult. So this order was, in your view, the 2017 order was final? Yes, Your Honor. And it, in your view, disposed of the interest issue? Yes, Your Honor, and to the extent it didn't, it may very well be a mistake. We can make that admission. But if it was a mistake, Rule 60B required it to be timely addressed. But Rule 60B requires that the order being challenged is final, right? Yes, Your Honor. Right. So you can't say that if it was a mistake that left the order unfinal, that 60B was the way to remedy it. If 60B isn't the proper remedy, because we maintain it was final, there... Right, but if it was not final because interest had not been acted on, then 60B has no application. Would you agree with that? Yes, Your Honor. And neither does 59E. Your Honor, 59E would allow the district court, and I think 60 to an extent would allow the district court to reconsider its prior order. So it would still be appropriate... Only if it's final. 59E requires finality, agree? Well, the case is pretty much standard, and Horn will call on that. Yes, Your Honor. And to that extent, then, if there's an order or a judgment pending, there's still an obligation to bring it to the court's attention. Because at this point, the court was operating as if this was a final judgment on the merits. The court had said, enter judgment and close the case accordingly. The court entered judgment. That is a strong indicia of finality, at the very least. And it should, at the very, very least, trigger something for the party to bring it to the court's attention. Because as we reference in the... Why? In ENZO, we didn't require the parties bringing it to the court's attention. So why should we here? Well, ENZO's distinguishable, as Your Honor properly noted, that's a case that pertains to a pending counterclaim for invalidity, which is given particular regard in the law. But even there, in ENZO, if Mr. Dragseth is right about the facts, and I don't have them completely familiar, so if you think he's wrong about the facts, please tell me. But if he's right about the facts, and both parties purportedly told the judge that there's nothing further the judge needs to do, in that case, it's even more advantageous because such a statement could have been viewed as a waiver of the counterclaim by the party who later complained the counterclaim was not fully adjudicated. So we don't have anything here. We don't have HALO on the record saying, OK, this is a good final judgment. Two thumbs up. Go ahead and move forward. Your Honor, ENZO is distinguishable on two grounds. First, even if it was not a final judgment on the merits, the order was entered on July 28, 2004, and the appeal was filed on August 20, 2004. It acted timely and within the time prescribed for an ordinary appeal. They did address the issue in a timely fashion. That's not what happened here. Three years went by without any action. And to the extent that that inaction was caused by the procedural posture of this being up on appeal and then coming back down, opposing counsel suggested today that we could reserve certain issues, remand it to the district court, allow a determination, and bring it back up. That procedure is outlined by the rules. That's Federal Rule of Civil Procedure 62.1 for an indicative ruling and Federal Rule of Appellate Procedure 12.1. That was available in 2016 when the issue of pre-judgment interest was outstanding and on appeal. HALO could have asked for an indicative ruling at that time, and then we would have closed that loop and the appeal back in 2016. And the decision in 2017 would have addressed pre-judgment interest. We wouldn't be here. ENZO is also distinguishable because in Ohio, Willow Wood Company, Federal Circuit Opinion 2011 by then Judge Moore, now Chief Judge Moore, this court recognized the importance placed on these invalidity counterclaims. Citing Cardinal Company v. Morton International, a U.S. Supreme Court case out of 1993, the court acknowledged that in Cardinal Chemical, the Supreme Court held the public interest was so high in determining the validity of invalidity, determining invalidity counterclaims, that the Federal Circuit must consider a validity determination on appeal even if the court concludes that the defendant does not infringe the patent at issue. Even where there, historically, these claims were being dismissed for moveness, the Supreme Court had said, no, you need to adjudicate the invalidity counterclaim. The Supreme Court has never had a similar public policy with regard to pre-judgment interest. Pre-judgment interest is or is not a form of damages? It is a component of damages. So pre-judgment interest is a form of damages? Don't you think that when a party is adjudicated to be a responsible party and damages are on the table as necessary, the court is obligated to actually assess damages? Your Honor, I would agree with that. So it seems like damages feels, to me, awfully important, kind of like validity. In a situation here, you've got a scenario where guilt was adjudicated, damages were entitled. In fact, they raised a motion for pre-judgment damages. The court says in the docket entry it intends to issue an order. There actually doesn't seem to be any dispute among the parties that pre-judgment interest was something they were, in fact, entitled to. Yes, Your Honor. As a component of damages. Yes, Your Honor. They somehow just didn't get it. Yes, Your Honor. So I think that I'm not sure that I find a lot of room between this case and Enzo, but I am wondering whether or not the room, meaning I don't find any room in your argument that somehow this issue is less important than the issue was in Enzo or in Ohio Willow or any other case. But I guess what I'm wondering is about what about failure to prosecute or latches and do we have a resolution below that is sufficiently ripe on appeal for us to make a determination that the three-year delay here is so long as to pursue their ability to continue to demand. So I have two part answer to that question, Your Honor. And first is directly to the question of latches. I believe this court has enough in the record and the problem has been preserved for the purposes of appeal that this court can determine that there's a failure to prosecute and latches. There was, as Your Honor indicated, a status conference in September of 2016 and then no further mention. Under the District of Nevada's local rules, specifically Local Rule IA 7-1A, litigants can send a letter to the court after 90 days. You want me to resolve in the first instance a question that makes me interpret and understand Nevada rule blah, blah, blah, 1A little I-467. Does that not seem like something maybe I ought not to do? Especially a local rule can be waived by a district court judge. Can it not? It certainly can, Your Honor. Given that latches is an equitable question over which judges have enormous amounts of discretion, doesn't it seem improvident at the least for an appellate court to dive into a court's local rules and decide latches in the first instance? I can't agree to that, Your Honor, but the court need not reach the local rule issue because ultimately that just goes to whether or not they diligently prosecuted the issue of prejudgment interest. In terms of the finding below, Judge Gordon, as Judge Bryson properly indicated, made all of the appropriate findings for latches, found that there was an inordinate passage of time, three years, found that there was prejudice because Pulse had been sold. The new owners took it with knowledge and understanding that the judgment was final. Time had passed. There was on the docket a separate line item saying judgment. That is enough in the record to find latches, and to the extent we... Did he actually find prejudice or did he just acknowledge the company was sold? Acknowledge that the company was sold and that they had a right to rely on the determination of finality, the appearance of finality at the very least, even if it wasn't. Just you're probably right. Just direct me to where in the opinion he said that. So if we go... Appendix page two is the judge's order, the last paragraph of this. Yep. The last sentence, in fact. Yeah, he actually goes so far as to say unfair, right? Yes, Your Honor. So I believe that is sufficient for this court to reach the issue of latches, but on a more fundamental level, the question of whether or not damages were fully resolved doesn't... Is there some period during which questions like... Because this has got to be a matter of regional circuit law, not federal circuit law. This question of at what point in time it becomes too late to revisit a final judgment that is somehow potentially deficient. So is there evidence that you have presented or cases that you have briefed regarding how long a period the regional circuit, in this case, District of Nevada... I don't even know what circuit that is. What circuit is that? Ninth. Ninth Circuit. Okay. Does the district... Does the Ninth Circuit have cases on sort of a presumption of latches after X period of time or anything like that? Not to my knowledge. And that portion of latches was not fully briefed, but I don't think the court needs to necessarily reach latches because the issue of damages does not preclude finality. For instance, in the red... What do you say about the Penn West case from the Third Circuit in which the majority said this case is not over and sent it back to the district court? Justice Alito, then on the Court of Appeals, dissented and said, please, this really should be treated as ended. But that was in dissent. So Penn West is distinguishable because that is a case in which the parties apprised the district court that there had been a settlement when there had not been. The facts are entirely different there because the court entered judgment close to the case believing a fact to be untrue, believing that the parties had settled when no such agreement had been reached, whereas this one is the court making a conscious decision to adjudicate the claims and in its estimation, end the litigation. The more apropos... It's very difficult, and I think you essentially acknowledged this earlier, that it's very difficult to conclude, given all the background in this case, that this judge decided sometime between the time he asked the parties to brief, he decided that prejudgment interest was appropriate, he asked the parties to get together and try to come up with a number, and if they couldn't, then to brief what the right number would be, and then suddenly decided later, nope, the number is zero. And you're on. So that, it seems to me, to say that this is a case in which he decided the right number is zero seems to me to blink the facts, a reality in any event. So the district court is entitled to set the amount of prejudgment interest pursuant to 35 U.S.C. 285, or 284, excuse me. Is your argument, like Judge Bryson just articulated, that you believe the 2017 order implicitly decides that zero dollars are awarded, or is your argument that the 2017 order may well have inadvertently left off an issue, i.e. prejudgment interest, but the opposing side let it go and never raised it like they should have? Your Honor, those are both of our arguments in the alternative, and I will- So you are arguing, then, that the 2017 order, sub saliencio, decided that zero dollars of prejudgment interest were warranted? In this circumstance, yes. In this circumstance, where both of you agree prejudgment interest was, in fact, warranted, at an above zero level, you think, nonetheless, the district court decided it was zero? And to that point, Your Honor, HALO, or PULSE, never agreed that prejudgment interest was warranted. HALO and PULSE- But the judge did. The judge did, yes, Your Honor. And he said, the number is going to be between this and this, and go figure it out. Yes, Your Honor, and in 2016, when Judge Gordon made that determination, HALO had already, or PULSE, excuse me, had already objected to the timeliness issue, said that prejudgment interest should have been brought as a matter of Ninth Circuit law as a Rule 59e motion within 28 days of the judgment, and that didn't happen, so that prejudgment interest wasn't appropriate. Judge Gordon may very well have implicitly or at sub saliencio made that determination. But even if it was a mistake, even if it was a mistake that rose the level of voiding the judgment, Rule 59e and 60b required a timely motion to amend that. And the interest of damages on prejudgment interest does not avoid finality, because if you look at the red brief at page 25, we cite Brigham versus the Secretary of the Department of Health and Human Services, this Court's decision in 95, where the omission of pain and suffering damages to which a party was entitled did not preclude finality. The decision in Pandrel is similarly instructive. Thank you, Your Honor. Mr. Dragstaff, you have some rebuttal time? Yes, thank you. I think the panel pretty well understands the issues here. I'll just hit a few points. I heard radium. I don't see a radium in the brief. There's a lot going on today that hasn't gone on until today in this case. Latches was never argued by them, never decided at the court. Any fact findings the court made were in the context of saying, does HALO meet the heavy burden of overcoming a final judgment? If you flip it around and say there was no final judgment, the weighing is completely different. This is not something that should be done on appeal. Other things that were new, Federal Rule of Procedure 12-1, indicative rulings, I don't think that's in their brief. Ohio Willow, I know there's nothing about that in their brief. Local Rule IA-7IA, that's not in their brief. Let me see. The sub silencio ruling of the court on September 6th, that's not in the brief. Even though in our blue brief, we spent about six pages talking about why the judge did not implicitly find. If you remember, we gave little pictures of the order and said the order was focused only on enhancement, nothing about interest. And as the panel, I think, understands, there's no way he could have silently ruled when he already said we should get some interest and then silently not afford us any. Penn West, brand new distinction over Penn West. And then finally, Your Honor, on Enzo, I do have the factual question you had on Enzo quickly. The court says at page 1378, and this is in regard to the summary judgment argument, I'll clean up quickly. Both counsel responded, this is at the summary judgment argument, that the court had covered all the issues raised and Enzo's counsel indicated that it would appeal the decision. Now our position is that when this court got Enzo, it said, well, I recognize all this kind of blame game going on in Enzo. But then the court says, it doesn't really matter. It said, we know that they, that leaves a trial judge with the impression that no claim will remain in this case. But we have no choice but to take cognizance of the non-finality created by the unquestioned existence of that counterclaim. Our claim unquestionably, unquestionably still existed as this court held in the previous appeal. We heard a distinction. Okay, Mr. Brancat, I waited for you to take a breath, but apparently you can go on for a very long time without breathing. Thank you. Thank you. This case is taken under submission.